EDMUND HARWOOD *et al.*, Appellants, *v.* HIRAM A. TUCKER *et al.*, Appellees.

APPEAL FROM COOK COUNTY COURT OF COMMON PLEAS.

A. sold a draft on C. to B., and at the same time sent C. the exact amount in bank bills, with a request to honor the draft. *Held,* That this was in equity an appropriation of the money, and that from the receipt of it, and the request, C. held the funds as a trustee, for the benefit of B.; but he was not bound to pay in coin, but only in such funds as were forwarded to him.

An unauthorized demand, by B.'s agent, for payment in specie, would not relinquish his right to the funds which were held in trust for him.

When C. had, in good faith, returned a portion of the funds to A., on account of their being uncurrent, he was not responsible for their loss by A.'s failure.

HARWOOD & Co. filed their bill in the Common Pleas of Cook county, stating that Ellis & Sturgis, of Cincinnati, had given them a draft upon H. A. Tucker & Co., of Chicago, for the sum of $2,000, to meet which a like sum had been sent by express to meet this particular draft. That when the draft was presented to Tucker & Co., Ellis & Sturgis had failed in business, but had not made any different appropriation of the money forwarded to Tucker & Co. That Tucker & Co. claim that a portion of said money is due from Ellis & Sturgis to them, and, therefore, Tucker refused to pay the whole amount of the draft, and asking that the $2,000 shall be decreed to be paid on the draft.

The answer admits the receipt of the $2,000, but alleges that $240 of it was uncurrent, and was, therefore, sent back to Ellis & Sturgis, and that the residue was credited to Ellis & Sturgis, on the books of Tucker & Co., but denies the appropriation of the fund, and deny any acceptance by them of the draft; states that the draft was presented and payment demanded in coin, and not in the said bills transmitted by Ellis & Sturgis. That Tucker & Co. only owed Ellis & Sturgis the sum of $900. That Tucker & Co. had been garnisheed by other creditors of Ellis & Sturgis and had answered under that process; that they were indebted to Ellis & Sturgis by reason of the said remittance to them of the said $2,000. There was a general replication.

The cause was submitted to the common pleas, J. M. WILSON, Judge, at October term, 1856, upon bill, answers and proofs, and he decreed that complainants should take nothing by their bill. The complainants then prayed an appeal and bring the case to this court.

SHUMWAY, WAITE and TOWNE, for Appellants.

SEDGWICK and WALKER, for Appellees.

CATON, J. We place our reversal of this decree, upon the ground that the remittance of $2,000 was made for the express and specified purpose of paying the draft drawn by Ellis & Sturgis upon the defendants, in favor of the complainants, so that it is unnecessary to inquire, what would have been the rights of the complainants upon any general funds in the hands of Tucker & Co., belonging to Ellis & Sturgis, at the time the former received notice of the draft. That such a draft against a general balance in the hands of Tucker & Co., and notice of it by them, created no legal liability in favor of Harwood & Marsh before they had accepted or agreed to pay it, is a point not controverted, but what are the rights of the parties in equity, on such a state of facts, I will not now undertake to say ; I consider it beset with difficulties, whether considered upon the authority of adjudged cases, or whether it be considered in reference to its influence upon commercial convenience. As we understand the facts of this case, it depends upon an entirely different principle, about which there can be really no dispute, unless it be, whether the remedy might not have been obtained in a court of law.

The facts of the case are simply these : Harwood & Marsh, in Cincinnati, purchased a draft of Ellis & Sturgis, on Tucker & Co., of Chicago, for $2,000 and paid them that amount, less exchange. At the same time Ellis & Sturgis remitted by express to Tucker & Co., that amount in bank notes, and advised them as follows :

CINCINNATI, October 23, 1854.

H. A. TUCKER & Co.,

DEAR SIR: We hand $2,000 bank notes for Cr. Draw same amount, $2,000. Please honor Harwood & Marsh.

Respectfully,

Ellis & Sturgis.

We are satisfied, from the evidence, that at the time of this transaction, H. A. Tucker & Co. were not the general correspondents of Ellis & Sturgis, but that their correspondence was limited to special, or a particular class of transactions, and was principally confined to remitting to them western currency, for the purchase of New York exchange, to enable Ellis & Sturgis to keep up their account with their correspondent there. The usual course of the conduct of those transactions was for Tucker & Co., whenever they received a package of currency, to remit the proceeds, or the value thereof, in exchange, to the correspondent of Ellis & Sturgis, in New York, to the credit of that house. Thus approximately closing each transaction. This, however, was not always strictly the case, for sometimes, from special causes, the eastern

35

remittance did not precisely correspond with the value of the package received, when Ellis & Sturgis were at once advised of the difference. The effect of this, was to leave, frequently, if not generally, an open, but limited account, between the parties. Beside this purchase of eastern exchange, Ellis & Sturgis, during the whole course of their correspondence, drew but twelve bills on Tucker & Co. These may be divided into three classes. First, there were four bills drawn, and funds to the same amount sent the same day, in each case, for the express purpose of meeting these bills. The bill now in question was one of these. Ellis & Sturgis advised Tucker & Co., of these drafts and special remittances to meet them, sometimes more or less explicitly, but conveying the same information substantially. One of these reads thus: "We hand $500, Ohio, etc., to pay our draft, that amount. W. Borden." Another reads; "Herein find $750, bank notes; have drawn on you same amount." And the other reads: "We hand $586 bank notes to pay our draft on you, that amount drawn to-day to J. S. Evans. If there is any charge send figures." Five of the other drafts were drawn when larger remittances were made, from which they were directed to retain sufficient to meet the drafts, and with the balance, to purchase New York exchange; and the remaining three drafts, which were for small amounts, were drawn without any particular advices, but their amounts were expected to be retained out of remittances forwarded in the course of the exchange transactions. Now, when we consider the character of the correspondence between the two houses, and the nature of the special transactions, especially of the four drafts first above named, can we, without ignoring our common understanding, for a moment doubt, that the special remittances were made to meet the drafts drawn at the same time and for no other purpose? If such was the case, then were those funds especially appropriated for those objects, and by receiving them, Tucker & Co. impliedly agreed to hold them for the purpose of meeting those drafts, and not for general account. Indeed, the evidence shows that Ellis & Sturgis kept no general account with Tucker & Co., for the purposes of exchange between Cincinnati and Chicago, but that account was kept at Chicago with R. K. Swift & Co., and all the transactions between Ellis & Sturgis and Tucker & Co., were of a special character, and it was not the intention of the former to keep a fund to their credit, in the hands of the latter, and when there happened to be balances either way, it arose from accidental causes, as where uncurrent funds were received for particular purposes, and returned as inapplicable to those purposes. Balances arising from these accidental causes, must, from the

nature of the correspondence, when they did occur, generally be against Ellis & Sturgis, although small, and of a temporary character, and the statement of the account kept by Tucker & Co., as exhibited by Dox, their cashier, shows that such was the case. Now, the advices sent with the four drafts first above named, all of which I have copied, although differently worded, show clearly that the remittances were all designed for the same purposes, that is, to pay the drafts therein advised. Such is the express language of two, and the meaning of the other two is scarcely less apparent, especially when all the circumstances are considered. The letters show that, while the greatest possible brevity is designed to be observed, consistent with intelligence, yet no set form of words, was in use at the bank, to convey particular intelligence, so that the inference in the forms of expression, whether the stronger or the weaker were used, to announce the design of a particular appropriation, was accidental and not designed.

The remittance having been made for the especial purpose of paying this draft, it was an appropriation of the funds, to that purpose, and the holder of the draft acquired an interest in the fund, which a court of equity at least will protect. No matter what the state of the accounts between the two banking houses may have been, when Tucker & Co. received this money with advices of the especial appropriation, they had no right to pass it to the general credit of Ellis & Sturgis, but were bound to hold it as trustees for the holders of the draft.

Of course they were not bound to pay the draft in coin when it was presented by Burch, but were only bound to pay it in such funds as they had received for that purpose, but this unauthorized demand of coin did not relinquish their right to the fund which the defendants did hold in trust for them. The draft, with the special appropriation of the money remitted, was an assignment of the fund to the complainants, and Tucker and Co. were bound so to regard it, till legitimately withdrawn.

Perhaps, strictly speaking, the defendants should have held the whole of the funds, including the $240, uncurrent money, to meet the draft, yet as trustees of the complainants, they acted in good faith and probably as sound discretion and good judgment dictated, under the circumstances, in returning that money, that it might be replaced with good. We do not think they ought to be held responsible for its loss, by the failure of Ellis & Sturgis.

The decree of the common pleas must be reversed, and the suit remanded, with instructions to that court, to enter a decree in favor of the complainants for $2,000 and interest, less $240 and interest.

*Decree reversed.*